UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NEVIN P. COOPER-KEEL, JD,

    Plaintiff,                                                       Hon. Hala Y. Jarbou

v.                                                                       Case No. 1:22-cv-1236

GARRETT KEEL-WORRELL,

    Defendant.
_____/

**REPORT AND RECOMMENDATION**

Plaintiff Nevin Cooper-Keel, proceeding pro se, filed a verified complaint against his cousin, Garrett Keel-Worrell, on December 28, 2022, invoking this Court's diversity jurisdiction over the action pursuant to 28 U.S.C. § 1332(a). (ECF No. 1 at PageID.1.) Plaintiff has since amended his complaint in response to Defendant's Rule 12(b)(1) motion. (ECF Nos. 5 and 11.)

Presently before me is Defendant's Renewed Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) and (6) for lack of subject matter jurisdiction and failure to state a claim, erroneously brought as a motion for summary judgment. (ECF No. 14.) The motion is fully briefed and ready for decision. Pursuant to 28 U.S.C. § 636(b)(1)(B), I recommend that the motion be **GRANTED IN PART AND DENIED IN PART**, concluding that the Court has subject matter jurisdiction over this action, but that Plaintiff fails to state a claim under 42 U.S.C. § 1983 and 18 U.S.C. § 1512.[1]

---

[1] Although Plaintiff has requested oral argument, I conclude that oral argument is unnecessary as the parties' briefs adequately develop the issues.

## I. Facts

### A. Procedural Background

As noted above, Plaintiff filed his complaint in this action on December 28, 2022. He alleged state-law claims of: (1) harassment; (2) false imprisonment; (3) extortion; (4) invasion of privacy; and (5) intentional infliction of emotional distress. (ECF No. 1 at PageID.10–11.) On January 17, 2023, Defendant filed a motion for summary judgment (motion to dismiss) pursuant to Rule 12(b)(1), asserting that the Court lacks subject matter jurisdiction over Plaintiff's complaint because Plaintiff failed to plead facts supporting that the amount-in-controversy requirement for diversity jurisdiction is satisfied. (ECF No. 5.) On February 8, 2023, apparently relying on Federal Rule of Civil Procedure 15(a)(1)(B), Plaintiff filed an amended complaint, adding a claim pursuant to 42 U.S.C. § 1983 based on Defendant's alleged violation of a federal criminal statute, 18 U.S.C. § 1512, a claim for civil conspiracy, and a claim for slander and libel. (ECF No. 11.) On February 27, 2023, Defendant filed a renewed motion for summary judgment (motion to dismiss) under Rules 12(b)(1) and 12(b)(6), arguing that the Court lacks subject matter jurisdiction, and that Plaintiff fails to state a claim under 42 U.S.C. § 1983 and 18 U.S.C. § 1512. (ECF No. 28.) Plaintiff filed his response on March 27, 2023. (ECF No. 28.) Defendant did not file a timely reply.

### B. Factual Background

Because Defendant contends that Plaintiff fails to allege facts showing that the jurisdictional threshold is satisfied, I focus on the original complaint. This is because the amount in controversy is assessed as of the time the complaint is filed. *See Klepper v. First Am. Bank*, 916 F.2d 337, 340 (6th Cir. 1990) ("When determining whether the amount in controversy has been

satisfied, we examine the complaint at the time it was filed.") (citing *Worthams v. Atlanta Life Ins. Co.*, 533 F.2d 994, 997 (6th Cir. 1976)).

Plaintiff resides in Allegan, Michigan, and Defendant resides in Visalia, California. (ECF No. 1 at PageID.1.) Although Plaintiff and Defendant are cousins, it is evident they have a contentious relationship. The complaint gives the strong impression that they despise one another. Plaintiff and Defendant are further connected by family farmland, in which their mothers and a third sister each owns an undivided one-third interest. The property seems to be the principle root of the conflict. Plaintiff resides on and farms a portion of it pursuant to a lease, but both parties have permission to hunt on it. (*Id.* at PageID.4–5.) Further complicating the relationship, the property is the subject of litigation in an Allegan County Circuit Court case between Plaintiff's mother and the aunt, on one side, and Defendant's mother on the other.

Plaintiff alleges that Defendant has harassed and stalked him for many years going back to at least 2015. Plaintiff claims that sometime during that year, Defendant had been intoxicated and was defaming him at a local restaurant in Allegan. After Plaintiff called Defendant and asked him to stop defaming him, Defendant went to Plaintiff's house and challenged Plaintiff to come out and fight. When Plaintiff refused, Defendant broke into Plaintiff's garage and found Plaintiff's children's pet goat, which had just died. Defendant hung the goat on Plaintiff's mailbox, which his children could see from their bedrooms. (*Id.* at PageID.2.)

On December 20, 2020, Defendant texted Plaintiff that he deserved to be shot. Defendant then said that he would be traveling to Michigan in a few days to see Plaintiff. (*Id.*)

Plaintiff filed for divorce from his wife in the Allegan County Circuit Court in June 2020. Defendant testified against Plaintiff in the trial pertaining to child custody. One week prior to testifying, Defendant sent a letter to Plaintiff's mother and their aunt requesting that they sell him

3

their interests in the farm, apparently in exchange for his testimony favorable to Plaintiff in the child custody trial. (*Id.* at PageID.2–3.) Plaintiff does not allege that his mother and aunt acceded to Defendant's request. During the trial, which was broadcast by video, Defendant sent a text to Plaintiff's rebuttal witness while he was testifying. The text stated that Defendant was watching the witness's testimony. Plaintiff asked the judge if the text constituted witness intimidation, but the judge simply "shrugged." (*Id.* at PageID.3–4.) Plaintiff alleges that before he filed for divorce, Defendant and Plaintiff's ex-wife did not like each other. During the divorce proceeding, however, Defendant went on a vacation with Plaintiff's ex-wife and Plaintiff's children. He went on a separate trip with Plaintiff's ex-wife to Las Vegas once the divorce was finalized. Plaintiff says that Defendant took these trips in order to inflict emotional distress on Plaintiff. (*Id.* at PageID.3.)

In September 2021, Defendant texted Plaintiff about getting his mother and aunt to give Defendant and his sister two-thirds of the family farm. Defendant refused Plaintiff's request to stop texting him, so Plaintiff blocked Defendant's phone number. (*Id.* at PageID.4.)

On June 22, 2022, Defendant emailed Plaintiff that he was coming out to the property to do some maintenance on his deer blinds and that there would be no reason for Plaintiff to speak to him. Defendant emailed Plaintiff the next day offering to help Plaintiff bail hay. Plaintiff declined the offer and told Defendant that he had previously blocked his phone number and had twice told Defendant to stop contacting him. On June 25, 2022, while Plaintiff and his neighbor were baling hay, Defendant stopped his truck across the street and sat and watched Plaintiff and his neighbor working. When Plaintiff asked who it was, Defendant responded, "you know who it is," and told Plaintiff he wanted to help him bale hay. Plaintiff again told Defendant that he did not want his help, and Defendant drove off. The following day, Plaintiff discovered that a mechanism on his hay baler, which had been operable the prior evening, was broken. Plaintiff "think[s] Defendant

4

probably sabotaged and broke [his] baler," but he offers no factual allegations supporting his belief. (*Id.* at PageID.4–6.)

On November 11, 2022, Plaintiff was in his pole barn when Defendant walked inside, cornered Plaintiff, and asked him if he wanted any venison. Plaintiff told Defendant that he did not want his venison. (*Id.* at PageID.6.)

On November 13, 2022, Plaintiff took a guest, Justin Parker, around the property to look at some hunting spots before deer season opened. As they left Plaintiff's house and started into a field, Defendant drove by and waived to Mr. Parker. Defendant parked his car and followed Plaintiff and Mr. Parker into the field. Defendant then approached Plaintiff and began making offensive statements, including that Plaintiff's children did not love him. Plaintiff asked Defendant to stop, but Defendant followed them while continuing to say offensive things. Defendant also mentioned the lawsuit between their mothers. When Defendant followed Plaintiff and Mr. Parker onto Plaintiff's lawn, Plaintiff told Defendant he was trespassing and called 911. Before the police arrived, Defendant attempted to break into Plaintiff's garage. In addition, Defendant, who was carrying a crossbow, attempted to stop Mr. Parker from driving out of the driveway. Defendant's behavior, as well as his possession of a crossbow, caused Plaintiff to fear for his safety. Thus, on the advice of the 911 operator, Plaintiff went inside his house and locked his door while waiting for the police. (*Id.* at PageID.6–8.) During this time, Defendant called the Michigan Department of Natural Resources and reported that Plaintiff was harassing Defendant while he was hunting. On November 30, 2022, Plaintiff was charged with "hunters harassment."[2] (*Id.*)

---

[2] Under Michigan law, interference with an individual's hunting activity is a misdemeanor offense. Mich. Comp. Laws § 324.47301a.

5

For relief, Plaintiff requests a total of $1 million in damages for emotional distress, pain and suffering, and wage loss he suffered as a result of Defendant's actions. (*Id.* at PageID.11.)

## II.  Subject Matter Jurisdiction

### A.  Motion Standard

A motion to dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) may be brought as either a facial attack or a factual attack. *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994). A facial attack pertains to whether the plaintiff has alleged a sufficient factual basis in the complaint to support subject matter jurisdiction. *Id.* When the defendant raises a facial challenge, the court must take the allegations in the complaint as true. *O'Bryan v. Holy See*, 556 F.3d 361, 376 (6th Cir. 2009). In a factual attack, the court considers evidence outside the pleadings. *Ritchie*, 15 F.3d at 598. When this type of attack is asserted, "no presumptive truthfulness applies to the factual allegations, and the court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Id.* (internal citation omitted). Here, Defendant's challenge is a facial challenge because Defendant has not presented evidence outside of the pleadings on the issue of the amount in controversy.[3]

### B.  Discussion

"The jurisdiction of federal courts is defined by Article III of the United States Constitution and by acts of Congress." *Williams v. Duke Energy Int'l, Inc.*, 681 F.3d 788, 798 (6th Cir. 2012). "It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of

---

[3] The copy of the Michigan Court of Appeals decision in *Cooper-Keel v. Cooper-Keel*, No. 359288, 2022 WL 3333251 (Mich. Ct. App. Aug. 11, 2022), that Defendant attaches to his brief does not constitute evidence outside of the pleadings. It is a decision from another court which the Court may consider in deciding a Rule 12(b) motion, as "[f]ederal courts may take judicial notice of proceedings in other courts of record." *Rodic v. Thistledown Racing Club, Inc.*, 615 F.2d 736, 738 (6th Cir. 1980) (quoting *Granader v. Public Bank*, 417 F.2d 75, 82–83 (6th Cir. 1969)).

establishing the contrary rests upon the party asserting jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted). A federal court thus has an independent obligation to examine its own jurisdiction to ensure that it has the authority to decide the case. *Williams v. United States*, 927 F.3d 427, 434 (6th Cir. 2019) (quoting *Henderson v. Shinseki*, 562 U.S. 428, 434 (2011)).

Pursuant to 28 U.S.C. § 1332(a)(1), "district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000 . . . and is between . . . citizens of different States. . . ." To satisfy the amount-in-controversy requirement, a plaintiff's allegations must support a good faith argument that the amount in dispute exceeds the $75,000 threshold. *See Schultz v. General R.V. Ctr.*, 512 F.3d 754, 756 (6th Cir. 2008) (citing *Gafford v. General Elec. Co.*, 997 F.2d 150, 157 (6th Cir. 1993)). The general rule applicable to cases originally brought in federal court is that "the sum claimed by the plaintiff controls if the claim is apparently made in good faith." *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288 (1938) (footnote omitted). A court "should consider the amount alleged in a complaint and should not dismiss a complaint for lack of subject matter jurisdiction unless it appears to a legal certainty that the plaintiff in good faith cannot claim the jurisdictional amount."[4] *Massachusetts Cas. Ins. Co. v. Harmon*, 88 F.3d 415, 416 (6th Cir. 1996) (internal quotation marks omitted). Courts have found that the "legal certainty" test is met when, for example, state law does not allow the type of damages the plaintiff seeks. *See Charvat v. NMP, LLC*, 656 F.3d 440, 447 (6th Cir. 2011) ("It is a legal certainty that the plaintiff cannot recover the damages that he or she

---

[4] Defendant's argument that "Plaintiff has failed to plead his sum certain damages with any legal certainty," (ECF No. 14-1 at PageID.101), misstates the law. As set forth above, the sum that a plaintiff alleges controls *unless it appears to a legal certainty* that the plaintiff cannot recover the jurisdictional amount.

7

seeks when the applicable law limits or bars the damages."); *Bakshi v. Avis Budget Grp., Inc.*, No. 20-10419, 2022 WL 704944, at *4 (E.D. Mich. Mar. 8, 2022) ("A plaintiff cannot satisfy the legal certainty test when, for example, his damages are limited by a statutory or contractual cap, or when the theories of damages employ double counting." (internal quotation marks omitted)).

The Sixth Circuit has held that the amount-in-controversy requirement is satisfied if: (1) "there is a legal basis for [the plaintiff's] claim"; and (2) "there is some chance that [the plaintiff] could recover the amount claimed." *Kovacs v. Chesley*, 406 F.3d 393, 395 (6th Cir. 2005). A plaintiff's claims may be aggregated to satisfy the jurisdictional threshold. *See Compass Grp. USA, Inc. v. Eaton Rapids Pub. Schs.*, 349 F. App'x 33, 35 (6th Cir. 2009) ("In determining whether Chartwells reached the $75,000 jurisdictional threshold, the school district acknowledges, we may aggregate its tort and contract claims."); *Klepper v. First Am. Bank*, 916 F.2d 337, 341 (6th Cir. 1990) ("It is well established that claims [brought by a single plaintiff against a single plaintiff] can be aggregated to satisfy the jurisdictional amount requirement").

However, the Sixth Circuit has also recognized that a court need not aggregate a "defective ab-initio state-law claim" with other facially valid claims to satisfy the jurisdictional amount. *Saglioccolo v. Eagle Ins. Co.*, 112 F.3d 226, 233 (6th Cir. 1997). In *Saglioccolo*, the court found it appropriate to disregard the plaintiff's deficient intentional infliction of emotional distress claim, reasoning:

> A contrary conclusion would give plaintiffs an incentive to insert in complaints meritless intentional infliction of emotional distress claims—claims for which the amount in controversy often is difficult to determine—to create federal court subject matter jurisdiction over other state-law claims that, on their own, would fail to satisfy the amount-in-controversy requirement.

*Id.* When a state-law claim is not challenged in a Rule 12(b)(6) motion, as was the case in *Saglioccolo*, a court is limited to a "superficial" examination of the plaintiff's claim to determine whether it has a legal basis. *Kovacs*, 406 F.3d at 396–98; *see also Toikka v. Jones*, No. 12-204,

2013 WL 978926, at *2–3 (E.D. Ky. Mar. 12, 2013) (concluding that because the plaintiffs failed to plead the requisite elements of their false imprisonment and conspiracy to wrongfully imprison claims, they were required to meet the jurisdictional threshold through their assault and defamation claims).

Having conducted a "superficial" examination of Plaintiff's complaint, I conclude that Plaintiff has failed properly to plead three claims—harassment, false imprisonment, and invasion of privacy—under Michigan law which could possibly contribute to the jurisdictional threshold. First, as for the harassment claim, while Michigan law recognizes claims for harassment in the employment setting based on religion or certain characteristics such as race or sex, *see* Mich. Comp. Laws § 37.2202(a); *Radtke v. Everett*, 442 Mich. 368, 381 (1993), I am aware of no Michigan case recognizing a tort for generalized harassment. *See Guilbeaux v. City of Detroit*, No. 5:19-cv-13728, 2020 WL 8836924 at *7 (E.D. Mich. Nov. 23, 2020), *report and recommendation adopted*, 2021 WL 508425 (E.D. Mich. Feb. 11, 2021) ("I have found no case law establishing undue harassment as a tort in the state of Michigan and, thus, the Court should dismiss this claim against each Defendant."). There is thus no legal basis for this claim.

Second, as for the false imprisonment claim, Plaintiff alleges that Defendant restrained Plaintiff to his home on November 13, 2022, while Defendant waited outside with a weapon. (ECF No. 1 at PageID.10.) A false imprisonment claim requires "(1) an act committed with the intention of confining another, (2) the act directly or indirectly results in such confinement, and (3) the person confined is conscious of his confinement." *Walsh v. Taylor*, 263 Mich. App. 618, 627 (2004) (citations and internal quotation marks omitted). Plaintiff alleges nothing more than Defendant had a crossbow and attempted to stop (but apparently did not stop) Mr. Parker from driving out of the driveway. Plaintiff does not allege that Defendant did any act—such as pointing

9

the crossbow at Plaintiff or telling Plaintiff that he would use it on him if he did not go into his house—evincing an intent to confine Plaintiff to his home. (*Id.* at PageID.8.) In fact, Plaintiff admits that he went inside and locked his door as instructed by the 911 operator, not Defendant. (*Id.*) Thus, Plaintiff fails to allege a valid basis for his false imprisonment claim.

Third, Plaintiff's invasion of privacy/intrusion on seclusion claim is legally insufficient. Plaintiff alleges that Defendants' acts of following Plaintiff to his home and attempting to break into his garage on November 13, 2022, was an unauthorized intrusion into his seclusion. This claim falls under the species of tort pertaining to invasion of privacy. In Michigan, the common-law right of privacy protects four types of invasion of privacy:

1. Intrusion upon the plaintiff's seclusion or solitude, or into his private affairs.

2. Public disclosure of embarrassing private facts about the plaintiff.

3. Publicity which places the plaintiff in a false light in the public eye.

4. Appropriation, for the defendant's advantage, of the plaintiff's name or likeness.

*Tobin v. Civil Serv. Emps. of State of Mich.*, 416 Mich. 661, 672 (1982) (quoting *Beaumont v. Brown*, 401 Mich. 80, 95 n.10 (1977)). Plaintiff's action invokes the first type, intrusion upon seclusion. The Michigan Court of Appeals has explained this tort as follows:

> An action for intrusion upon seclusion focuses on the manner in which information is obtained, not its publication; it is considered analogous to a trespass. There are three necessary elements to establish a prima facie case of intrusion upon seclusion: (1) the existence of a secret and private subject matter; (2) a right possessed by the plaintiff to keep that subject matter private; and (3) the obtaining of information about that subject matter through some method objectionable to a reasonable man.

*Doe v. Mills*, 212 Mich. App. 73, 88 (1995) (internal citations omitted). Plaintiff fails to allege that his garage contained anything having to do with a "secret and private subject matter," nor does Plaintiff allege that Defendant's "attempt" resulted in Defendant actually obtaining information

10

about the private subject matter. Thus, this claim also fails to provide a valid legal basis for damages.

As for the remaining claims—civil extortion and intentional infliction of emotional distress—I cannot conclude from a "superficial" examination that those claims have no legal basis to support an award of damages, nor has Defendant demonstrated that those claims are "defective ab-initio," *Saglioccolo*, 112 F.3d at 233, through a Rule 12(b)(6) motion. Accordingly, Plaintiff may rely on only those claims to meet the amount in controversy.

The second question is whether there is "some chance" that Plaintiff could recover the amount he claims. *Kovacs*, 406 F.3d at 395. Plaintiff seeks damages for wage loss, emotional distress, and pain and suffering totaling $1 million. To begin, Plaintiff fails to identify how much of the claimed $1 million pertains to each type of damages he seeks. He also fails to support his alleged damages for wage loss and pain and suffering with facts indicating that he actually incurred such damages caused by Defendant's alleged unlawful conduct. In short, Plaintiff offers no factual allegation explaining how Defendant's conduct caused him to lose wages, and nothing in the complaint indicates that Defendant physically injured him.[5] *See, e.g.*, *Wolfe v. Rushmore Loan Mgmt. Servs.*, No. 3:20-cv-615, 2020 WL 7345657, at *2 (W.D. Ky. Dec. 14, 2020) ("While [the plaintiff] states that he is seeking $650,000 in damages, the complaint is devoid of any factual basis to support that amount or facts which suggest that the amount claimed is not merely delusional, rather than a request made in good faith."); *Osamor v. Robinson,* No. 1:09-cv-694, 2010 WL 5898076, at *4 (S.D. Ohio Dec. 9, 2010), *report and recommendation adopted*, 2011

---

[5] In his response, Plaintiff indicates that sabotage to his hay baler caused him to lose approximately $25,000.00 of income in 2022. (ECF No. 28 at PageID.194.) Plaintiff does not allege this in his complaint, but even if he had, as set forth above, the complaint alleges no fact plausibly establishing that Defendant sabotaged Plaintiff's baler.

WL 797428 (S.D. Ohio Mar. 1, 2011) ("[P]laintiff's blind assertion for $45,000,000 in compensatory damages is not supported with sufficient facts to survive a motion to dismiss.").

This leaves Plaintiff's request for emotional distress damages of $1 million. The facts alleged in the complaint, while perhaps supporting some emotional distress damages, indicate that the request for damages in this amount was not made in good faith. For example, while Plaintiff alleges that he experienced severe emotional distress, he does not allege that his level of distress was so severe that he sought mental health treatment, nor does he offer facts showing that the alleged harassment was anything more than an annoyance. *See Brown v. Robinson*, No. 1:08cv646, 2009 WL 1313364, at *2 (S.D. Ohio May 8, 2009) ("Plaintiff's blind assertion for '$1,000,000 in compensatory damages for mental, emotional distress' . . . is not supported with sufficient facts to survive a motion to dismiss."). Nonetheless, elsewhere in his complaint, Plaintiff alleges that the amount in controversy exceeds $75,000 (ECF No. 1 at PageID.1, 11), which is the amount Plaintiff must allege to establish diversity jurisdiction. *See Marczeski v. Law*, 122 F. Supp. 2d 315, 321 (D. Conn. 2000) (having "no difficulty in concluding that plaintiff's demand for $10,000,000 was not made in good faith," but noting that the pertinent question is "whether the Court can conclude with 'legal certainty' that plaintiff's claims, in the aggregate, do not exceed $75,000"). Because emotional distress damages are unliquidated, the good faith standard applies: "If the plaintiff's claim is in good faith for an amount higher than the jurisdictional amount, then jurisdiction exists in the federal court unless it appears to a legal certainty that more than the jurisdictional amount could not be recovered by the plaintiff." *Wood v. Stark Tri-County Bldg. Trades Council*, 473 F.2d 272, 273 (6th Cir. 1973) (citing *Red Cab Co.*, 303 U.S. 283).

While I do have concerns about whether Plaintiff can prove damages anywhere close to $75,000, there is no basis at this point to find that it is a legal certainty that Plaintiff cannot recover

12

at least $75,000 in damages on his two claims, as Michigan law permits recovery of emotional or mental distress damages for such claims, regardless of whether a plaintiff has received mental health treatment, *see Birkhill v. Todd*, 20 Mich. App. 356, 365–66 (1969), and without any sort of cap. If successful on his claims, Plaintiff may very well end up recovering much less than the jurisdictional amount, but such an outcome does not preclude jurisdiction.

Finally, Defendant contends that Plaintiff inflated his damages in bad faith as a means to avoid the judges of the Allegan County Circuit Court, whom Plaintiff has repeatedly criticized as biased and unfair to him. (ECF No. 14 at PageID.95.) Defendant contends that this is indicative of forum shopping. While I am aware of Plaintiff's ongoing criticism of the Allegan County Circuit Court, I find no basis to conclude that Plaintiff's filing of his action in this Court, and the damages he claims in excess of $75,000, amount to bad faith or forum shopping.

### III.  Failure to State a Claim

#### A.  Motion Standard

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a claim must be dismissed for failure to state a claim on which relief may be granted unless the "[f]actual allegations [are] enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (internal citations and footnote omitted).

As the Supreme Court has held, to satisfy this rule, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). This plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* If the complaint simply "pleads facts that are merely consistent with a

13

defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (internal quotation marks omitted). As the Court further observed:

> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged— but it has not "show[n]"—"that the pleader is entitled to relief."

*Id.* at 678–79 (internal citations omitted).

**B.     Discussion**

Defendant contends that Plaintiff's claim under 42 U.S.C. § 1983 is subject to dismissal because Defendant is not a state actor. To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). As the Sixth Circuit has observed, "[a] plaintiff may not proceed under § 1983 against a private party 'no matter how discriminatory or wrongful' the party's conduct." *Tahfs v. Proctor*, 316 F.3d 584, 590 (6th Cir. 2003) (quoting *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999)). Plaintiff fails to allege that Defendant was a state actor. Defendant's role as a witness in the child custody trial did not render him a state actor. *See Easley v. Dietrich*, No. 1:11-cv-299, 2011 WL 1811065, at *2 (W.D. Mich. May 12, 2011) ("Individuals who report crimes and testify as witnesses are not state actors for the purpose of § 1983 claims.") (citing *Moldowan v. City of Warren*, 578 F.3d 351, 399 (6th Cir. 2009)); *Garrett v. Fisher Titus Hosp.*, 318 F. Supp. 2d 562, 573 (N.D. Ohio 2004)

("The mere fact that the individual defendants were complainants and witnesses in an action which itself was prosecuted under the color of law does not make their complaining or testifying other than what it was, i.e., the action of private persons not acting under the color of law."). Plaintiff alleges no fact indicating that Defendant's alleged attempts to interfere with Plaintiff's witness's testimony were "fairly attributable to the State." *Lugar v. Edmonson Oil Co.*, 457 U.S. 922, 937 (1982). Defendant was nothing more than a private actor. Plaintiff argues in his response that he alleged in his amended complaint that "Defendant, and people like Judge Kengis, [were] working together to deprive me of my state and federal rights under color of law." (ECF No. 28 at PageID.196 (citing ECF No. 11 at PageID.70).) Plaintiff's apparent contention that this allegation supports a Section 1983 conspiracy is insufficient; it is nothing more than a legal conclusion that will not suffice for a conspiracy claim. *See Becker v. Clinton*, No. 99-3811, 2000 WL 553911, at *1 (6th Cir. Apr. 28, 2000) (noting that "vague and conclusory allegations, unsupported by material facts, are not sufficient to state a conspiracy claim under § 1983") (citing *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987)).

    Dismissal of Plaintiff's claim based on 18 U.S.C. § 1512 (tampering or threatening a witness) is also proper, whether brought in conjunction with his Section 1983 claim or as an independent *claim*. This is because Section 1512 is a criminal statute that does not authorize a private right of action. *See, e.g., Cassaday v. Pure Options*, No. 1:22-cv-532, 2022 WL 2663093, at *3 (W.D. Mich. July 11, 2022) (noting that courts have found that Section 1512 does not give rise to a private right of action); *Lath v. Oak Brook Condo. Owners' Ass'n*, No. 16-CV-463, 2017 WL 1051001, at *13 (D.N.H. Mar. 20, 2017) (finding "18 U.S.C. § 1512 does not provide for a private right of action"); *Drake v. Enyart*, No. 3:06CV-217, 2006 WL 3524109, at *5 (W.D. Ky. Dec. 4, 2006) (same). Plaintiff's musings about whether he retains a common law right as a private

citizen to initiate a criminal prosecution are irrelevant. This is a civil action, not a criminal matter, and even if Plaintiff retained the right he urges, he cannot use a criminal statute that provides no private right of action to assert a civil claim. Moreover, the Supreme Court has observed that its cases "demonstrate that, in American jurisprudence at least, a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another." *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973) (citing, among others, *Younger v. Harris*, 401 U.S. 37, 42 (1971)); *accord Gratton v. Cochran*, Nos. 19-5176/5555, 2020 WL 2765775, at *2 (6th Cir. Jan. 2, 2020). Finally, Plaintiff's argument fails, if for no other reason, because Section 1512 applies to federal, not state, proceedings. *See United States v. Burns*, 298 F.3d 523, 540 (6th Cir. 2002) (the government must establish that the defendant "(1) corruptly persuade[d] (2) a witness in an official federal proceeding (3) with the intent to influence that witness's testimony"); *Park South Assocs. v. Fischbein*, 626 F. Supp. 1108, 1113 (S.D.N.Y. 1986) (explaining 18 U.S.C. § 1512 "does not apply to state court proceedings").

### III.  Conclusion

For the foregoing reasons, I recommend that the Court conclude that it has subject matter jurisdiction and **deny** the Rule 12(b)(1) portion of Defendant's motion to dismiss (ECF No. 14), but **grant** the Rule 12(b)(6) portion of the motion and dismiss Plaintiff's 42 U.S.C. § 1983 and 18 U.S.C. § 1512 claims **with prejudice**.

Dated: April 14, 2023                                                            /s/ Sally J. Berens
                                                                                            SALLY J. BERENS
                                                                                            U.S. Magistrate Judge

## **NOTICE**

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within 14 days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).