UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NEVIN P. COOPER-KEEL, JD,

    Plaintiff,                                   Hon. Sally J. Berens

v.                                                Case No. 1:22-cv-1236

GARRETT KEEL-WORRELL,

    Defendant.
_____/

**OPINION**

Plaintiff, proceeding pro se, filed a verified complaint against Defendant on December 28, 2022, invoking this Court's diversity jurisdiction pursuant to 28 U.S.C. § 1332(a). (ECF No. 1 at PageID.1.) Plaintiff filed an amended complaint as of right on February 8, 2023 (ECF No. 11), and was granted leave to file a second amended complaint on July 3, 2023. (ECF No. 48.) Plaintiff's remaining claims harassment/stalking and malicious prosecution.

Presently before the Court is Defendant's Motion for Summary Judgment Pursuant to Federal Rule of Civil Procedure 56. (ECF No. 73.) The motion is fully briefed and ready for decision. For the reasons that follow, the Court will **GRANT** Defendant's motion and dismiss Plaintiff's second amended complaint with prejudice.

### I. Background

The Court recited the full factual background set forth in Plaintiff's seconded amended complaint in its November 3, 2023 Opinion and Order (ECF No. 63), and will not repeat it here. Instead, the Court sets forth only the facts that are pertinent to Plaintiff's remaining claims.

Plaintiff's claims against Defendant, his cousin, arise out of events that occurred on family farmland owned by the parties' mothers and their aunt. Plaintiff alleges that he leases part of the

farmland as his residence, but both parties have had permission to hunt on the property for many years. (ECF No. 49 at PageID.379, 382–85.)

Plaintiff alleges that on December 28, 2020, Defendant texted Plaintiff that he deserved to be shot. Defendant then said that he would be traveling to Michigan in a few days to see Plaintiff. (*Id.* at PageID.379.) On September 2021, Defendant texted Plaintiff about getting his mother and aunt to give Defendant and his sister two-thirds of the family farm. Defendant refused Plaintiff's request to stop texting him, so Plaintiff blocked Defendant's phone number. (*Id.* at PageID.382.)

On June 22, 2022, Defendant emailed Plaintiff that he was coming out to the property to do some maintenance on his deer blinds and that there would be no reason for Plaintiff to speak to him. Defendant emailed Plaintiff the next day offering to help Plaintiff bale hay. Plaintiff declined the offer and told Defendant that he had previously blocked his phone number and had twice told Defendant to stop contacting him. On June 25, 2022, while Plaintiff and his neighbor were baling hay, Defendant stopped his truck across the street and sat and watched Plaintiff and his neighbor working. When Plaintiff asked who it was, Defendant responded, "you know who it is," and told Plaintiff he wanted to help him bale hay. Plaintiff again told Defendant that he did not want his help, and Defendant drove off. (*Id.* at PageID.382–83.)

On November 11, 2022, Plaintiff was in his pole barn when Defendant walked inside, cornered Plaintiff, and asked him if he wanted any venison. Plaintiff told Defendant that he did not want his venison. (*Id.* at PageID.384.)

Plaintiff alleges that on November 13, 2022, Plaintiff took a guest, Justin Parker, around the property to look at some hunting spots before deer season opened. As they left Plaintiff's house and started into a field, Defendant drove by and waived to Mr. Parker. Plaintiff alleges that Defendant parked his car and followed Plaintiff and Mr. Parker into the field. He alleges that

2

Defendant then approached him and began making offensive statements, including that Plaintiff's children did not love him. Plaintiff says he asked Defendant to stop, but Defendant followed them while continuing to say offensive things. Defendant also mentioned the lawsuit between their mothers. When Defendant followed Plaintiff and Mr. Parker onto Plaintiff's lawn, Plaintiff told Defendant he was trespassing, went into his house, and called 911. (*Id.* at PageID.384–88.)

Defendant eventually contacted the Michigan Department of Natural Resources (DNR) and reported that Plaintiff was harassing Defendant while he was hunting. On November 30, 2022, Plaintiff was charged with "hunters harassment."[1] (*Id.* at 387–88.) The prosecutor voluntarily dismissed the "hunter's harassment" case against Plaintiff on February 27, 2023. (*Id.* at PageID.393.)

## II.  Motion Standard

Summary judgment is appropriate if there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Material facts are facts that are defined by substantive law and are necessary to apply the law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if a reasonable jury could return judgment for the non-moving party. *Id.*

The court must draw all inferences in a light most favorable to the non-moving party, but may grant summary judgment when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Agristor Fin. Corp. v. Van Sickle*, 967 F.2d 233, 236 (6th Cir. 1992) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

## III.  Discussion

---

[1] Under Michigan law, interference with an individual's hunting activity is a misdemeanor offense. Mich. Comp. Laws § 324.47301a.

As noted, Defendant contends that he is entitled to summary judgment on both of Plaintiff's remaining claims, harassment/stalking and malicious prosecution. In support of his motion, Defendant has submitted: (1) a screenshot of the alleged December 28, 2020 text; (2) his affidavit; (3) video evidence of the November 13, 2022 encounter leading to the hunter's harassment charge; (4) Defendant's requests for admissions to Plaintiff and Plaintiff's response; (5) Defendant's September 2021 text to Plaintiff regarding the family farmland; (6) Defendant's June 22, 2022 email to Plaintiff and others regarding Defendant's plan to do work on his tree stands; (7) the Nolle Prosequi Order dismissing the hunter's harassment charge; (8) the DNR complaint and case report; and (9) the Michigan State Police civil incident report. (ECF Nos. 73-2–73-6, 74–77.)

      **1.**      **Harassment/Stalking**

The Court has determined that Plaintiff's harassment claim arises under Mich. Comp. Laws § 600.2954. Pursuant to this section, a victim may bring a civil action against an individual who engages in conduct that is prohibited as stalking under Section 411h or 411i of the Michigan penal code, Mich. Comp. Laws §§ 750.411h and 750.411i. Mich. Comp. Laws § 600.2954(1); *see also Pobursky v. Gee*, 249 Mich. App. 44, 46 (2001). "Stalking" is defined as

> a willful course of conduct involving repeated or continuing harassment of another individual that would cause a reasonable person to feel terrorized, frightened, intimidated, threatened, harassed, or molested and that actually causes the victim to feel terrorized, frightened, intimidated, threatened, harassed, or molested.

Mich. Comp. Laws § 750.411h(1)(d). A "course of conduct" requires "a pattern of conduct composed of a series of 2 or more separate noncontinuous acts evidencing a continuity of purpose." *Id.* § 750.411h(1)(a). "Harassment" is defined as

> conduct directed toward a victim that includes, but is not limited to, repeated or continuing unconsented contact that would cause a reasonable individual to suffer emotional distress and that actually causes the victim to suffer emotional distress. Harassment does not include constitutionally protected activity or conduct that serves a legitimate purpose.

4

*Id.* § 750.411h(1)(c). A "victim" means "an individual who is the target of a willful course of conduct involving repeated or continuing harassment." *Id.* § 750.411h(1)(f). "Unconsented contact" is defined as "any contact with another individual that is initiated or continued without that individual's consent or in disregard of that individual's expressed desire that the contact be avoided or discontinued." *Id.* § 750.411h(1)(e). Finally, "emotional distress" requires "significant mental suffering or distress that may, but does not necessarily, require medical or other professional treatment or counseling." *Id.* § 750.411h(1)(b).

In its November 3, 2023 Opinion and Order, the Court found that certain alleged acts by Defendant could not be considered in determining whether Plaintiff stated a claim because they were either outside the limitations period or amounted to constitutionally protected activity. However, the Court found that Plaintiff had stated a plausible claim based on the alleged December 28, 2020 "deserve to be shot" text and Defendant's alleged November 13, 2022 conduct at the farm and at Plaintiff's residence. Given that Plaintiff alleged two incidents of harassment, the Court found no need to determine whether the remaining acts qualified as harassment under the statute.

Defendant contends that Plaintiff's harassment/stalking claim fails because none of Defendants' alleged acts constitutes harassment under the statute. Defendant further contends that his evidence undermines Plaintiff's allegations concerning the December 28, 2020 "deserve to be shot" text and the November 13, 2022 incident at the farm.

Turning first to the incidents not specifically analyzed in the November 3, 2023 Opinion and Order—(1) the September 2021 text asking Plaintiff to convince his mother and aunt to give Defendant and his sister two-thirds of the family farm; (2) the June 22, 2022 email notifying Plaintiff that Defendant would be coming to Michigan to do some maintenance on his deer blinds

5

and that there would be no reason for anyone to speak/engage with him; (3) the June 2022 email and the June 25, 2022 in-person offer to help Plaintiff bale hay; and (4) the November 11, 2022 offer of venison to Plaintiff inside Plaintiff's leased pole barn—the Court concludes that no reasonable juror could find that this conduct satisfies the statutory requirements for a harassment/stalking claim.

Regarding the September 2021 text, Defendant has presented what appears to be the actual text exchange that Plaintiff references in his complaint. (ECF No. 73-6.) In this exchange, Defendant simply asks Plaintiff what he wanted (apparently how much) for their grandfather's estate (the farmland). (*Id.* at PageID.607.) Nothing about this exchange would cause "a reasonable person to feel terrorized, frightened, intimidated, threatened, harassed, or molested." Mich. Comp. Laws § 750.411h(1)(d). Moreover, while perhaps annoying to Plaintiff, Defendant's statements would not even arguably cause a reasonable person to suffer the level of emotional distress required to establish a claim.

Next, Defendant sent the June 22, 2022 email not only to Plaintiff, but to their respective mothers and, apparently, their aunt to notify every one of his plans to be at the farm over the next couple of days attending to his tree stands. Given the family's ongoing dispute over the property, the email served the legitimate purpose of providing notice to all concerned and cannot be considered "harassment" under the statute.

Defendant's offers to help Plaintiff bale hay likewise cannot reasonably be characterized as conduct that would "terrorize[], frighten[], intimidate[], threaten[], harass[], or molest" a reasonable person. While Defendant's offer may have annoyed Plaintiff, most people would welcome an offer of help to complete a chore.

Finally, rather than harassing conduct, Defendant's offer of venison—which, Plaintiff admits, Defendant knows Plaintiff "love[s]" (ECF No. 49 at PageID.384)—appears to have been nothing more than a friendly gesture. In any event, Defendant's offer would not have caused a reasonable person to experience "significant mental suffering or distress." Mich. Comp. Laws § 750.411h(1)(b).

Plaintiff's claim thus boils down to Defendant's December 28, 2020 text and the November 13, 2022 incident at the farm. Defendant has submitted the pertinent portion of the actual text exchange, which is as follows:

| | |
|---|---|
| Defendant: | You told people I might tape your daughter??? |
| | Rape |
| Plaintiff: | No, I did not! |
| Defendant: | Yes you did |
| | See ya in a couple days |
| Plaintiff: | I'm in a bullet proof best in my own home, not in cozy Cali |
| | I don't give a duck how you feel or what you do |
| Defendant: | Tha deer s everyday shit for people who know they should be shot |
| Plaintiff: | You saying you're going to shoot me? |
| Defendant: | No I'd like to just kick your ass |

(ECF No. 73-2.) Although Plaintiff alleged that Defendant said that Plaintiff "deserve[d] to be shot," Defendant clearly did not make that statement in the text, and in response to Plaintiff's inquiry, specifically denied any intention to shoot Plaintiff. The statement mentioning "deer" is essentially unintelligible, although Defendant states that he was referring to shooting deer, not Plaintiff. (ECF No. 73-3 at PageID.590.) Regardless, the context of the text exchange indicates

7

that Defendant's statement that he would "like to just kick [Plaintiff's] ass" was not unconsented contact because Defendant was responding to Plaintiff's question. Moreover, in his response, Plaintiff admits that he initiated the December 28, 2020 text conversation with Defendant (ECF No. 84 at PageID.663), although the portion submitted does not reflect that. Nonetheless, nothing in the text exchange indicates that Plaintiff sought to discontinue the contact. *See United States v. Burns*, 109 F. App'x 52, 58 (6th Cir. 2004) (noting that courts "have discretion to consider a statement made in a brief to be a judicial admission" so long as the statement is "deliberate, clear, and unambiguous" (quoting *MacDonald v. General Motors Corp.*, 110 F.3d 337, 340 (6th Cir. 1997))); *Hartford Fire Ins. Co. v. CMC Constr. Co.*, 3:06-cv-11, 2012 WL 12965761, at *7 (E.D. Tenn. Jan. 30, 2012) ("Statements made in court motions, memoranda, and briefs also may be treated as binding judicial admissions." (citing *City Nat'l Bank v. United States*, 907 F.2d 536, 544 (5th Cir. 1990))). Thus, Plaintiff's binding admission precludes any assertion that the December 28, 2020 text exchange constitutes unconsented contact under Mich. Comp. Laws § 750.411h(1)(e). Finally, Plaintiff fails to show that the text amounts to harassment because he presents no admissible evidence, including his testimony in the form of an affidavit or declaration, establishing that he actually experienced "significant mental suffering or distress" as a result of Defendant's statements in the text exchange. *See* Mich. Comp. Laws § 750.411h(1)(b).

Turning to the November 13, 2022 incident, Defendant states in his affidavit that he went to the farm to hunt that day and waved at an individual he believed to be Plaintiff but was actually Justin Parker. He further states that after he parked his car, he walked to his deer stand on the property and found Mr. Parker with Plaintiff, who was smoking a cigar and making noise in the woods near his stand. Given the circumstances, Defendant believed that Plaintiff was present at his deer stand for the sole purpose of interfering with his hunt. (ECF No. 73-3 at PageID.591.)

As additional evidence of the incident, Defendant has submitted a video from his perspective as he walks through the field to his deer stand. As he arrives, he encounters Plaintiff, who is smoking a cigar, and Mr. Parker. Defendant approaches Plaintiff and asks what they were doing. Plaintiff responds that he was showing Mr. Parker some hunting spots on the property in connection with a plan to host a deer camp. The parties then begin to argue over permission to hunt on the property, and Defendant accuses Plaintiff of interfering with his hunt and threatens to call the DNR. As Plaintiff tells Defendant to stop contacting him, Defendant continues to follow Plaintiff and Mr. Parker as both Defendant and Plaintiff exchange barbs and insults, and Mr. Parker refuses to identify himself. The video ends with the parties arguing about whether Mr. Parker had permission to hunt or be on the property. (ECF No. 81.) It is undisputed that Defendant followed Plaintiff back to Plaintiff's house as both parties continued to argue about rights to the property. It is also undisputed that after they reached the house, one of the parties contacted the Michigan State Police, who responded to the scene, spoke to both parties, and determined that the matter was a civil dispute. (ECF No. 77.)

No evidence supports a conclusion that Defendant's initial contact with Plaintiff constituted unconsented contact with Plaintiff, as Defendant was simply walking to his deer stand, which Plaintiff admits Defendant had permission to do. Nonetheless, even if Defendant's conduct subsequently became "unconsented" after Plaintiff told Defendant to stop following him, based on the circumstances as shown on the video, no reasonable juror could conclude that this family squabble over hunting rights and permission to use the property, including Defendant's conduct, "would cause a reasonable person to feel terrorized, frightened, intimidated, threatened, harassed, or molested," or to experience "significant mental suffering or distress." This is particularly true given that Plaintiff was accompanied by his friend, Mr. Parker, and Plaintiff fully engaged in the

9

argument with Defendant. Moreover, as noted above, Plaintiff fails to present proper summary judgment evidence in the form of an affidavit or declaration or other admissible evidence demonstrating that he actually felt "terrorized, frightened, intimidated, threatened, harassed, or molested" by Defendant's conduct or experienced "significant mental suffering or distress" because of it.[2] Moreover, even if this incident arguably constitutes harassment as defined in Mich. Comp. Laws. § 750.411h(1)(c), Plaintiff's claim still fails because he cannot establish the requisite "course of conduct." *Id.* § 750.411h(1)(a).

Accordingly, Plaintiff fails to create a genuine issue of material fact as to his harassment/stalking claim.

### 2. Malicious Prosecution

On November 14, 2022, Defendant submitted a complaint to the DNR regarding hunter harassment based on the previous day's incident. (ECF No. 76.) Defendant reported that, on November 13 on his way to hunt, he drove past Plaintiff's residence and waived to someone he initially thought was Plaintiff, but then realized it was someone else. Defendant said that after parking his vehicle and preparing to go to his deer stand, he observed Plaintiff and the other individual (Mr. Parker) walk down the path that leads to the area where Defendant had been hunting over the previous few days. He reported that as he approached his deer stand, he found Plaintiff and Mr. Parker standing about 30 yards in front of his deer stand, and Plaintiff was smoking a cigar. Plaintiff said that he believed that Plaintiff's intent was to place his scent and the cigar smoke in the area to scare off deer and interfere with Defendant's hunting efforts. Defendant

---

[2] Plaintiff has submitted a flash drive containing numerous documents and videos without any explanation as to their relevance of many of those items to his claims. (ECF No. 86.) Nonetheless, the Court has reviewed several of the videos, some of which continue beyond the point at which Defendant's video ends, and notes that they still confirm that while Defendant's conduct was perhaps annoying to Plaintiff, it did not rise to the level of harassment or stalking under the statute.

also reported that Plaintiff said he was there to show Mr. Parker some hunting sites in connection with a deer camp that he planned to host. Defendant said that he believed Plaintiff knew where he was hunting because Plaintiff was in the barn working on a tractor on November 10 and likely saw him walking to his hunting stand from the barn. (ECF No. 73-3 at PageID591; ECF No. 76 at PageID.613–14.) The investigator spoke to Plaintiff on November 16, 2022, and Plaintiff explained that he and Mr. Parker were at the site simply to find a place to hunt for a deer camp that Plaintiff intended to host when Defendant approached them. (*Id.* at PageID.614, 620–21.) After completing his investigation, the DNR investigator referred the matter to the prosecutor for review. (*Id.* at PageID.614–15.) Plaintiff was charged with hunters harassment on November 30, 2022, which the prosecutor voluntarily dismissed on February 27, 2023.

To succeed on a malicious prosecution claim under Michigan law, a plaintiff must prove that:

> (1) the defendant has initiated a criminal prosecution against him, (2) the criminal proceedings terminated in his favor, (3) the private person who instituted or maintained the prosecution lacked probable cause for his actions, and (4) the action was undertaken with malice or a purpose in instituting the criminal claim other than bringing the offender to justice.

*Miller v. Sanilac Cnty.*, 606 F.3d 240, 248 (6th Cir. 2010) (quoting *Walsh v. Taylor*, 263 Mich. App. 618, 633–34 (2004)). In Michigan, "[d]ue to the important state policy of encouraging citizens to report possible criminal violations within their knowledge, a defendant cannot be held liable for malicious prosecution unless he took some active role in instigating the prosecution." *Rivers v. Ex–Cell–O Corp.*, 100 Mich. App. 824, 832–33 (1980). There can be no liability if the defendant "made full and fair disclosure of all of the material facts within his knowledge to the prosecutor, and the prosecuting attorney recommends a warrant." *Id.* at 833. In such case, the defendant "has not 'instituted' the charge." *Id.* (quoting *Renda v. Int'l Union, UAW*, 366 Mich. 58, 83–87, 114 N.W.2d 343, 355–56 (1962)). Thus, private individuals and police officers can be

liable "only if they knowingly furnish false information that the prosecutor relies and acts upon in initiating criminal proceedings." *Disney v. City of Dearborn*, No. 2:06-CV-12795, 2006 WL 2193029, at *4 (E.D. Mich. Aug. 2, 2006) (citing *Matthews v. Blue Cross & Blue Shield of Mich.*, 456 Mich. 365, 385–90 (1998)).

Plaintiff's malicious prosecution claim fails because the evidence shows that Defendant made full and fair disclosure of all facts within his knowledge to the DNR investigator, and the DNR investigator conveyed those facts, along with his summary of Plaintiff's statements during the interview denying any wrongdoing, to the prosecutor for review. Although Plaintiff contends that Defendant conveyed false information to the DNR investigator, he fails to present any evidence supporting this assertion. Defendant's report to the DNR investigator was fully consistent with the video evidence, and Plaintiff's disagreement with Defendant's belief regarding Plaintiff's motive fails to create a genuine issue of material fact. Moreover, as Plaintiff concedes, the prosecutor who initiated the charge admitted to Plaintiff that he had not read the DNR investigator's report prior to signing the warrant against Plaintiff. (ECF No. 84 at PageID.668–69.) Thus, even if Defendant had supplied false information to the DNR investigator, by Plaintiff's own admission, the prosecutor could not have relied and acted on it in initiating the misdemeanor charge.

## IV. Conclusion

For the foregoing reasons, the Court will grant Defendant's motion for summary judgment as to both remaining claims.

An order consistent with this opinion will enter.

Dated: May 15, 2024                              /s/ Sally J. Berens
                                                 SALLY J. BERENS
                                                 U.S. Magistrate Judge